UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
SLADE GORTON & CO.,          )
       Plaintiff,            )
                             )
       v.                    )    C.A. No. 05-11366-MLW
                             )
ANTONIO BARILLARI, S.A.,     )
       Defendant.            )
```

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                    March 6, 2008

I.  INTRODUCTION

Plaintiff Slade Gorton & Co., Inc. ("Gorton") has timely moved for default judgment against defendant Antonio Barillari, S.A. ("Barillari"), following entry of default against Barillari on April 9, 2007.  Gorton now requests $650,000 in compensatory damages for breach of contract, multiple damages pursuant to Massachusetts General Laws Chapter 93A ("Chapter 93A"), a declaration that Gorton does not owe any money to Barillari, attorneys' fees and costs totaling $102,440.98, and prejudgment interest.  Defendant has not responded.  Gorton has properly supported its motion with a memorandum and an affidavit describing the amounts of damages, fees, and costs.  For the reasons set forth below, the motion is being allowed in part and denied in part.

II.  FACTS AND PROCEDURAL BACKGROUND

Gorton alleges the following facts, each of which must now be taken as true and considered established as a matter of law as a result of Barillari's default.  See <u>Franco v. Selective Ins. Co.</u>, 184 F.3d 4, 9 n.3 (1st Cir. 1999).

This action, for breach of contract and declaratory judgment, was initiated on June 28, 2005. Plaintiff Gorton is a Massachusetts corporation. Compl. ¶4. Defendant Barillari is a foreign corporation organized under the laws of, and located in, Argentina. Compl. ¶5. Barillari apparently has no offices or agents authorized to accept service of process in the United States. See Mem. in Supp. of Slade Gorton & Co., Inc.'s Mot. for Default J. ("Pl.'s Mem.") at 1.

The complaint alleges that Gorton and Barillari had done business together for many years. The relationship was originally a "purchase and sale" arrangement under which Barillari sold its seafood products to Gorton at an agreed upon price. The products would be shipped to Gorton and Gorton would re-sell the products through its distribution chains. See Compl. ¶¶6-7.

In 2001, the parties agreed to change to a "consignment" arrangement. Under the new arrangement, Barillari would ship seafood products to Gorton without a set price, and Gorton would sell the products at the time, location, and price that made reasonable business sense. Gorton would then pay Barillari based on the resale price, minus a percentage commission charged by Gorton to cover importation, storage, transportation, and sales costs. Id. ¶¶8-9.

Barillari continued to ship its products to Gorton with an invoice listing a nominal price. However, the amounts shown on the

invoices were not the amounts Gorton actually paid.  Instead, for years, Gorton performed and paid Barillari under the consignment arrangement described above.  Id. ¶10.  Barillari had full knowledge of this arrangement.  Id. ¶11.

In 2004, Barillari took the position that the consignment arrangement was actually a purchase and sale arrangement, and demanded that Gorton pay the full listed invoice price for all of the previous shipments.  On September 29, 2004, Barillari sent a letter to Gorton requesting that Gorton pay Barillari $7,673,032.27.  See Compl. Ex. B (copy of letter).  Gorton attributes this difference to three factors:

> (1) the actual price at which the product was sold pursuant to the consignment arrangement was lower than the nominal invoice amount;
>
> (2) failure of the invoices to reflect that Slade Gorton was permitted to subtract certain amounts associated with the storage and sale of the products; and
>
> (3) Barillari's failure to change the nominal pricing on the invoices to reflect that at some point the payment of freight charges became Slade Gorton's responsibility, but instead continued to reflect higher nominal prices that included freight charges as a Barillari expense.

Stanton Aff. ¶10.[1]

On June 21, 2004, Gorton and Barillari entered into a promissory note, under which Gorton paid $650,000 to Barillari in exchange for at least five containers of pink shrimp.  The note

---

[1] In support of its motion for default judgment, Gorton submitted the affidavit of John I. Stanton, the Executive Vice President of Procurement at Slade Gorton.  See Docket No. 15-2.

provided that if the containers were not shipped by July 31, 2004, the $650,000 would be due and payable to Gorton on July 31, 2004. Gorton has received neither the required shipments nor the $650,000, despite repeated demands. The note was entered into by one Ontiveros on behalf of Barillari. Ontiveros had executed similar notes in the past on behalf of Barillari and Barillari had performed its obligations under them. Ontiveros had actual and apparent authority to sign the note on behalf of Barillari. See Compl. ¶¶22-30; see also id. Ex. C (copy of note).

Gorton asserts three claims: breach of contract for failure to pay it the $650,000; a violation of Chapter 93A, for the same reason; and a declaratory judgment that Gorton does not owe Barillari the $7,673,032.27 that Barillari has requested.

Gorton served Barillari using the procedure specified by the Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents on September 1, 2005. See Pl.'s Mem. at 1; see also Returned Summons, Docket No. 10, January 19, 2007. Barillari challenged the service on technical grounds in Argentina. When this challenge was denied, Barillari pursued lengthy appeals in the Argentinean courts that were not resolved until the end of 2006. See Returned Summons; see also id. Ex. A (process server's translation of the official notice from the Argentinean Central Authority); id. Ex. B (copy of file from Argentinean court). The summons was returned executed and filed with the court on January

-4-

19, 2007.

Barillari did not file an answer or other response. After the deadline to do so passed, Gorton requested an entry of default. Default was entered on April 9, 2007. See Docket No. 12 (Clerk's Entry of Default). Gorton now moves for default judgment against Barillari.

In its motion for default judgment, Gorton first argues that Barillari breached the agreement established by the promissory note by not shipping the shrimp or returning the $650,000. See Pl.'s Mem. at 2. Gorton next asserts that Barillari's request that Gorton pay Barillari money is inconsistent with the agreement between the parties, as acknowledged by Barillari and indicated by the parties' course of dealing over several years. Id. at 4.

Finally, Gorton contends that Barillari violated Chapter 93A. More specifically, Gorton argues that:

> Barillari's actions . . . were knowing and willful and constitute "unfair or deceptive acts or practices in the conduct of any trade or commerce." Barillari's actions, conduct, and the impact thereof, occurred primarily and substantially within the Commonwealth of Massachusetts (Stanton Aff. ¶ 11), and as a result of Barillari's use or employment of unfair and deceptive acts and practices, Slade Gorton has suffered and continues to suffer loss of money or property.

Pl.'s Mem. 4-5.

As described earlier, Gorton, requests a default judgment against Barillari in the amount of $650,000 on its breach of contract claim; double or treble damages pursuant to Chapter 93A;

a declaration that it does not owe Barillari any money; fees and costs; and prejudgment interest. See Pl.'s Mem. at 5.

III. ANALYSIS

    A.  The Default Judgment Standard

    Federal Rule of Civil Procedure 55 permits the court to exercise its discretion and enter judgment against a party following an appropriate motion alleging that a party has failed to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a)-(b).  Rule 55 mandates a two-step process for a party who seeks a default judgment in his favor.  First, the party wishing to obtain a default judgment must apprise the court that the opposing party has failed to plead or otherwise defend by requesting "by affidavit or otherwise" that the clerk enter default on the docket. Fed. R. Civ. P. 55(a).  Second, following an entry of default, the party entitled to a judgment by default must apply to the clerk or court for entry of default judgment.  Fed. R. Civ. P. 55(b)(1)-(2).

    However, no party is entitled to a default judgment as of right.  Rather, the court is required to exercise sound judicial discretion in making this determination.  See, e.g., Hutchins v. Cardiac Sci., Inc., 456 F. Supp. 2d 173, 190 (D. Mass. 2006) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure §2685).

    When a claim is for a sum certain, or sum that can be made certain by computation, the clerk must enter judgment for that

-6-

amount plus costs against the defendant. <u>See</u> Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The court may conduct hearings to enter or effectuate a judgment if it needs to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. <u>See</u> Fed. R. Civ. P. 55(b)(2)(A)-(D). However, a hearing is not always required. In certain situations, "a district court can enter a final judgment [following a default] without requiring further proof of damages." <u>KPS & Associates, Inc. v. Designs By FMC, Inc.</u>, 318 F.3d 1, 19 (1st Cir. 2003).

When a party defaults, he concedes the truth of the factual allegations in the pleadings for the purpose of determining liability and damages. <u>See</u> <u>Franco</u>, 184 F.3d at 9 n.3; <u>Libertad v. Sanchez</u>, 215 F.3d 206, 208 (1st Cir. 2000); <u>Quirindondo Pacheco v. Rolon Moroles</u>, 953 F.2d 15, 16 (1st Cir. 1992). However, this does not mean that the party is automatically entitled to whatever relief it seeks. Rather, "[a]fter an entry of default, a court may examine plaintiff's complaint to determine whether it alleges a cause of action." <u>Quirindondo Pacheco</u>, 953 F.2d at 16.

Similarly, even when the alleged facts establish liability, the court may be required to conduct further inquiry to determine the amount of damages to award. <u>See</u> KPS 318 F.3d at 18-21. Generally, a hearing is required unless the amount of damages is

-7-

for a "sum certain" or "liquidated." Id. "A claim is not for a 'sum certain' [or liquidated] merely because the demand in the complaint is for a specific dollar amount." Id. at 20 n.9. Rather, "a claim is not a sum certain unless there is no doubt as to the amount to which plaintiff is entitled as a result of the defendant's default." Id. at 19.

The court rather than the clerk has addressed Gorton's motion for default judgment because it is necessary to decide whether the facts alleged establish a violation of Chapter 93A and, if so, whether multiple damages and attorneys' fees should be awarded. The alleged facts prove a breach of contract for a sum certain, $650,000. Therefore, no hearing is necessary to enter a default judgment on Gorton's breach of contract claim. However, as explained below, the alleged facts are not sufficient to prove Gorton's Chapter 93A claim. Therefore, no hearing is necessary to award damages or attorneys' fees on that claim.

B. Default Judgment is Appropriate on Gorton's Contract Claim

The alleged facts establish the existence of a contract, Barillari's breach of it, and damages of a sum certain. More specifically, the promissory note establishes that Gorton paid $650,000 as consideration for Barillari's promise to ship Gorton at least five containers of pink shrimp by July 31, 2004 or repay Gorton $650,000 on that date if the shipment was not made.

Barillari's default establishes that, as of July 31, 2004,

-8-

Gorton received neither the shrimp nor the $650,000 payment. <u>See</u> <u>Franco</u>, 184 F.3d at 9 n. 3. Therefore, Barillari breached the agreement as of that date. The promissory note establishes $650,000 as the "sum certain" to be awarded for that breach. Gorton's claim is analogous to the actions on money judgments or negotiable instruments discussed in <u>KPS</u>, 318 F.3d at 19-20, because the amount of damages is clear from the face of the relevant document. A hearing is not needed to determine the amount of damages.

Therefore, with respect to the breach of contract claim, a default judgment in the amount of $650,000 is being entered.

<u>C. Gorton Has Not Established a Violation of Chapter 93A</u>

With regard to Gorton's Chapter 93A claim, the court must first decide the threshold question of whether the facts Gorton alleges constitute a violation of the statute. <u>See</u> <u>Quirindondo</u> <u>Pacheco</u>, 953 F.2d at 16. Chapter 93A, the Massachusetts Consumer Protection Statute, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." M.G.L. ch. 93A, §2. If the court finds a violation of Chapter 93A "recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation . . . ." <u>Id.</u> §11. A prevailing plaintiff may also

-9-

recover attorneys' fees and costs.  Id.

"Chapter 93A gives no definition of 'unfairness,' and Massachusetts courts have refrained from establishing such a definition." In re Pharmaceutical Industry Average Wholesale Price Litigation, 491 F. Supp. 2d 20, 93 (D. Mass. 2007). Instead, "whether an act is unfair or deceptive is best discerned from the circumstances of each case." Buster v. George W. Moore, Inc., 783 N.E.2d 399, 413-14 (2003)(internal quotations and citation omitted).

Massachusetts courts have enumerated several factors to be considered when determining whether a practice is unfair: "(1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005); Serpa Corp. v. McWane, Inc., 199 F.3d 6, 15 (1st Cir. 1999).

For Chapter 93A claims based on a breach of contract, "mere breach of a legal obligation under commercial law, without more, does not amount to an unfair or deceptive act under G.L. c. 93A." Framingham Auto Sales, Inc. v. Workers' Credit Union, 41 Mass. App. Ct. 416, 418 (1996) (emphasis added); Commercial Union Ins. Co., 217 F.3d at 40 ("A mere breach of contract does not constitute an

unfair or deceptive trade practice under 93A.").

However, a Chapter 93A claim related to a breach of contract may sometimes be actionable. An important factor in finding conduct during a breach of contract dispute violative of Chapter 93A is whether it was coercive, extortionate, or intended to secure additional, unwarranted benefits for the breaching party. See Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 474 (1991) ("Conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes."); Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 17-19 (1st Cir. 1985) (payment withheld as a wedge to enhance bargaining power); Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55-56 (1st Cir. 1998) (defendants' "wrongful purpose was to extract a favorable settlement from [plaintiff] for less than the amount defendant knew it owed by repeatedly promising to pay, not doing so, stringing out the process, and forcing [plaintiff] to sue"); Community Builders, Inc. v. Indian Motocycle Assoc., Inc., 692 N.E.2d 964, 978-79 (Mass. App. Ct. 1998) (defendant engaged in willful effort to impair plaintiff's right to be paid under contract, and violated Chapter 93A, when defendant could have made necessary payments but through foot-dragging put pressure on plaintiff to compromise its claims).

Although the Massachusetts Supreme Judicial Court has noted

that a breach of the covenant of good faith and fair dealing "may" be sufficient to establish a Chapter 93A violation, Mass. Employers, 648 N.E.2d at 438, additional evidence of egregious conduct is generally required. See PH Group Ltd. v. Birch, 985 F.2d 649, 652 (1st Cir. 1993) ("[V]iolations of ch. 93A must meet a higher standard of liability than do breaches of an implied covenant of good faith and fair dealing.").

Although it found both a violation of good faith and fair dealing and a Chapter 93A violation in Mass. Employers, when affirming the 93A claim, the court specifically noted evidence of "conduct undertaken as leverage to destroy the rights of another party to the agreement," that "ha[d] a coercive quality" and of "unilateral, self-serving conduct . . . during the course of a dispute," based on a position that "had no substantive merit." Mass. Employers, 648 N.E.2d at 438. But see Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 864 N.E.2d 518, 539 (Mass. App. Ct. 2007) (noting that a breach of the covenant of good faith and fair dealing would provide "an independently sufficient basis" for finding a Chapter 93A violation).

The Massachusetts Appeals Court has further explained that in Anthony's Pier Four and the cases it cited, there was:

> a consistent pattern of the use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract has an extortionate quality that gives it the rancid flavor of unfairness. [citation omitted] In the absence of conduct having that quality, a failure

to perform obligations under a written lease, <u>even though</u>
<u>deliberate and for reasons of self-interest</u>, does not
present an occasion for invocation of c. 93A remedies.

<u>Atkinson v. Rosenthal</u>, 33 Mass. App. Ct. 219, 226 (1992) (emphasis
added).

Another factor that supports finding a Chapter 93A violation
during a contract dispute is harm to third parties.    In <u>Mass.</u>
<u>Employers</u>, a contracting party argued that "it relied in good faith
on its construction of the agreement and that its breach of
contract cannot alone be an unfair act or practice under [Chapter
93A]."    <u>Id.</u> at 438.    In affirming a finding of a Chapter 93A
violation, the court emphasized that the breaching party had based
its conduct on an uncounseled and baseless legal position and that
its conduct had a negative impact on innocent third parties.    <u>Id.</u>
at 438 (noting that the breaching party's conduct had
"jeopardiz[ed] the interests of subscribers in preserving their
workers' compensation coverage"); <u>see also</u> <u>Average Wholesale Price</u>
<u>Litigation</u>, 491 F. Supp. 2d at 95 (finding inflation of average
wholesale retail price of pharmaceuticals an unfair practice under
Chapter 93A in part because it "caused real injuries to the
insurers and the patients who were paying grossly inflated prices
for critically important, often life-sustaining, drugs").

Finally, a Chapter 93A claim has been held unmeritorious when
"plaintiff [failed] to claim an injury apart from that caused by
the alleged breach of contract," because the plaintiff failed to

-13-

demonstrate a "loss of money or property" as required by Chapter
93A.  <u>See</u> <u>Callahan v. Harvest Bd. Intern., Inc.</u>, 138 F. Supp. 2d
147, 166-67 (D. Mass. 2001).  Similarly, in <u>Lyle Richards Int'l,</u>
<u>Ltd. v. Ashworth, Inc.</u>, 132 F.3d 111 (1st Cir. 1997), the First
Circuit noted that a Chapter 93A claim was not valid when the
plaintiff "claimed no injury apart from that caused by the alleged
breach of contract."  <u>Id.</u> at 115.  In part, the court found that
the lack of additional damages indicated that merely a breach of
contract claim, but not a tort claim existed.  <u>Id.</u>

     In this case, Gorton's allegations establish a breach of
contract, but not a valid Chapter 93A claim.  There are in this
case no facts that indicate that Barillari's failure to pay the
$650,000 owed to Gorton under the promissory note was intended to
coerce Gorton into providing Barillari some additional benefit.
<u>Compare</u> <u>Anthony's Pier IV</u>, 411 Mass. At 474.  Nor do the facts
demonstrate that the failure to pay was part of a pattern, <u>see</u>
<u>Atkinson</u>, 33 Mass. App. Ct. At 226, or injured innocent third
parties, <u>Mass. Employers</u>, at 648 N.E.2d at 438.  Therefore, a
violation of Chapter 93A has not been established.  Accordingly,
there is no need for a hearing to determine whether an uncertain
amount of multiple damages or attorneys fees should be awarded.

     <u>D.  A Declaratory Judgment Is Not Appropriate</u>

     The Declaratory Judgment Act, 28 U.S.C. §2201, gives a federal
court the power, "in a case of actual controversy within its

-14-

jurisdiction," to "declare the rights and other legal relations of
any interested party seeking such a declaration, whether or not
further relief is or could be sought." 28 U.S.C. §2201(a). Even
where such a controversy exists, the Act "confers a discretion on
the courts rather than an absolute right upon the litigant." Pub.
Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 241 (1952);
see also Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 320 (1st Cir.
1992) (court's duty to exercise its jurisdiction is relaxed in
declaratory judgment actions)

     As described earlier, Barillari wrote a letter to Gorton in
2004 stating that it was owed $7,673,032.27. The record does not
indicate that any subsequent lawsuit was filed, here or in
Argentina, following that letter. Nor is there any other
indication that Barillari has attempted to collect anything from
Gorton. Therefore, it is not clear that there is now a genuine
dispute between the parties as to whether Gorton owes Barillari
anything or, if there is, how much Barillari claims it is owed.
If, as appears, there is now no dispute, the issues are
hypothetical and the court need not decide them. See U.S.
Liability Ins. Co. v. Selman, 70 F.3d 684, 694 n. 9 (1st Cir.
1995).

     Moreover, while the court accepts as true Gorton's allegation
that the parties' arrangement between 2001 and 2004 was one of
consignment, not purchase and sale, this does not necessarily mean

that Gorton does not owe Barillari any money.  The record does not establish the amounts of each invoice, the costs incurred by Gorton, the actual resale price of the shrimp, or other pertinent facts.  For example, Gorton alleges that "at some point the payment of freight charges became Slade Gorton's responsibility."  Compl. ¶21(c).  However, Gorton does not specify when they did or to what extent, if any, this changed the invoice prices.  Therefore, there is not an adequate basis for a declaratory judgment as to whether Gorton owes anything to Barillari.

Because the dispute between Gorton and Barillari with regard to the $7,673,032.27 is speculative, and because the record does not establish that Gorton is entitled to the relief it seeks in any event, the court is exercising its discretion not to enter a declaratory judgment.

### E.  Gorton is Entitled to Costs, But Not Attorneys' Fees

The general American rule is that a prevailing party may not recover attorneys' fees, as costs or otherwise.  See, e.g., Cmte. on Civic Rights of Friends of Newburyport Waterfront v. Romney, 518 F.2d 71, 72 (1st Cir. 1975).  This is the case even if a larger award would better deter the defendant or if attorneys' fees would cut significantly into the plaintiff's recovery.  See, e.g., Framingham Auto Sales, 41 Mass. App. Ct. at 418-19.  Plaintiffs have only requested attorneys fees pursuant to Chapter 93A and, as discussed earlier, that claim is without merit.  Therefore, Gorton

cannot recover attorneys' fees in this case.

However, Federal Rule of Civil Procedure 54(c) provides that "costs - other than attorneys' fees - should be allowed to the prevailing party." Fed. R. Civ. P. 54(c). Therefore, Gorton is entitled to recover its costs.

IV. ORDER

Accordingly, it is hereby ORDERED that:

1. The Plaintiff's Motion For Default Judgment (Docket No. 14) is ALLOWED in part and DENIED in part. The motion is allowed with regard to Count I (breach of contract) and denied with regard to Count II (Chapter 93A) and Count III (declaratory judgment). The request for attorneys' fees is denied, but the request for costs is allowed.

2. Defendant shall pay the plaintiff damages in the amount of $650,000 and costs in the amount of $4,445.48, for a total of $654,445.48, plus prejudgment interest on the $650,000 beginning on July 31, 2004, the date on which defendant was in breach. See M.G.L. ch. 231 §6C. Prejudgment interest shall be at a rate of twelve percent per annum. Id.


    /s/ MARK L. WOLF
UNITED STATES DISTRICT JUDGE